**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

HRH SERVICES LLC, et al.,

    Plaintiffs,

       v.                                    Civil Action No. 23-cv-02300 (JDB)

TRAVELERS INDEMNITY CO., et al.,

    Defendants.

---

## MEMORANDUM OPINION

This case arises from a contractual dispute between the operators of the Washington, D.C. restaurant The Alibi and the companies that allegedly insured the restaurant and handled the operators' insurance claim. After a fire at The Alibi, plaintiffs HRH Services, LLC, and Rachel Traverso (together, "HRH") submitted a claim under their insurance policy that defendants Northfield Insurance Company and Travelers Indemnity Company (together, "Travelers") handled. HRH then sued Travelers "for failing to timely process and pay an insurance claim, and for its bad faith to effectuate prompt, fair, and equitable settlement of a claim submitted in which coverage is clear." See Pls.' First Am. Compl. [ECF No. 9] ("Am. Compl.") ¶ 1. Travelers filed a partial motion to dismiss, and the parties fully briefed that motion.

Nonparty CooperPriest 237, LLC ("CooperPriest") then filed a motion to intervene and a request for an oral hearing on its motion. CooperPriest states that it is the owner of the premises of The Alibi, was HRH's landlord when the fire occurred, and should have been listed on the insurance policy as an "insured." CooperPriest further contends that pursuant to its lease with HRH, it has a security interest in and lien on any insurance proceeds that HRH accrues in this suit against Travelers, and these interests make intervention of right proper under Federal Rule of Civil

1

Procedure 24(a)(2).  HRH and Travelers oppose intervention.  For the following reasons, the Court will deny the request for an oral hearing and deny the motion to intervene.

## <u>BACKGROUND</u>

In June 2021, CooperPriest became the owner of the improved real property on which The Alibi is located (the "premises").  CooperPriest's Mem. in Supp. of Mot. to Intervene [ECF No. 19-1] ("Mem.") at 1; Assignment & Assumption of Lease [ECF No. 19-10] at 1.  Along with the property, CooperPriest also purchased the legal right to seek to recover back rent owed by the tenant prior to CooperPriest's purchase of the premises.  <u>See</u> Mem. at 1; Assignment & Assumption of Lease at 1.

HRH was the existing tenant when CooperPriest purchased the premises, and CooperPriest contends that HRH "was in breach of the lease, and owed past due rent[]"—by September 2021, $152,502.24 of it.  <u>See</u> Mem. at 1–3; Lease Assignment [ECF No. 19-5] at 1; Second Amendment to Lease Agreement [ECF No. 19-6] at 1; <u>see also</u> CooperPriest 237, LLC Statement to HRH Services, Inc. [ECF No. 19-11] ("Statement of debt") at 1–3.  As a result of the outstanding rent that HRH allegedly owes, CooperPriest contends that it now has a security interest in and lien on HRH's property.  Section 26.16 of the lease contract between CooperPriest and HRH provides that "to Secure the payment of all minimum rent and all other charges," CooperPriest as the landlord "shall have and is hereby granted by [HRH] . . . a contractual lien and security interest upon all the goods, wares, merchandise, inventory, furniture, fixtures, machinery, equipment and other personal property of [HRH] in or about the premises . . . and also upon all proceeds of any insurance which may accrue to [HRH] by reason of damage to or destruction of any such property." Indenture of Lease [ECF No. 19-2] ("Lease") § 26.16; <u>see</u> Mem. at 4.

The premises caught fire on September 14, 2021.  Am. Compl. ¶ 14.  Around that date, CooperPriest terminated HRH's lease.  See Mem. at 3; Letter from Georgia Papadopoulos, Manager, CooperPriest 237, LLC, to HRH Services, LLC (Sept. 13, 2021) [ECF No. 19-12] ("Termination letter") at 1.[1]  HRH had an insurance policy with Travelers that provided coverage for fire damage to The Alibi, and HRH promptly opened a claim.  See Am. Compl. ¶¶ 9, 11, 18.  The policy covered, with conditions and maximum amounts, losses including physical damage to the building, business property such as furniture and machinery, and HRH's personal property used at the building, as well as replacement costs for improvements made but not owned by HRH, such as fixtures, alterations, installations, or additions.  See id. ¶¶ 11–13.

Multiple strands of litigation resulted.  After disputes arose about the quality and pace of Travelers's investigation into and processing of the claim, HRH sued Travelers in D.C. Superior Court, claiming Travelers failed to timely process and pay the insurance claim.  See Am. Compl. ¶¶ 19–40, 46.  HRH alleges that Travelers breached the insurance contract, breached the implied covenant of good faith and fair dealing, breached its fiduciary duties, and negligently handled the insurance claim.  Id. ¶¶ 46, 51–52, 56–59, 63–64.  Travelers then removed the case to this Court.  Notice of Removal [ECF No. 1] ¶ 1.

Around the same time, CooperPriest and HRH sued one another, too.  In April 2024, CooperPriest sued HRH and CooperPriest's insurers in Virginia state court seeking, inter alia, declaratory judgments that HRH had breached the lease and owed CooperPriest $152,502.24, and that CooperPriest has a lien on and security interest in some of HRH's property, including insurance proceeds resulting from damage to the property.  See Am. Compl. ¶¶ 164, 167–70,

---

[1] The fire occurred on September 14, 2021.  See Am. Compl. ¶ 14.  The termination letter is dated September 13, 2021, but references the fire.  See Termination Letter at 1.  It is therefore unclear on which day CooperPriest terminated the lease.

CooperPriest 237, LLC v. Hartford Underwriters Ins. Co., Civ. A. No. CL-2023-11608 (Va. Cir. Ct. Apr. 15, 2024) [ECF No. 23-2] ("Virginia Compl."). And in June 2024, HRH countered, suing CooperPriest in D.C. Superior Court for various torts and a breach of the lease contract. See Compl. ¶¶ 1, 19, 28, 37, HRH Serv[s]., LLC v. CooperPriest 237, LLC, Civ. A. No. 2024-CAB-003789 (D.C. Super. Ct. June 13, 2024) [ECF No. 25-3] ("D.C. Compl.").

In July 2024, CooperPriest filed a motion to intervene in the breach of insurance contract action in this Court. See CooperPriest's Mot. to Intervene [ECF No. 19] ("Mot.") at 1; Mem. at 5. HRH and Travelers both opposed. See Pls.' Mem. in Opp'n to CooperPriest's Mot. to Intervene [ECF No. 23] ("Pls.' Opp'n"); Defs.' Mem. in Opp'n to CooperPriest's Mot. to Intervene [ECF No. 24] ("Defs.' Opp'n"). CooperPriest filed a reply to both oppositions. See CooperPriest's Reply to Pls.' & Defs.' Mems. in Opp'n to CooperPriest's Mot. to Intervene [ECF No. 25] ("Reply"). The motion to intervene is now fully briefed and ripe for decision.

## LEGAL STANDARDS

When resolving a motion to intervene, "the well-pleaded allegations in the Complaint are assumed to be true." Wildearth Guardians v. Salazar, 272 F.R.D. 4, 9 (D.D.C. 2010). "Additionally, where appropriate, the Court shall refer to the non-conclusory allegations and record evidence offered by the Putative Intervenors in support of their motion[] to intervene." Id. (citing Foster v. Gueory, 655 F.2d 1319, 1324 (D.C. Cir. 1981)).

Federal Rule of Civil Procedure 24(a) governs intervention of right, providing that

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The D.C. Circuit has "[p]ars[ed] the language of the rule" to identify a four-factor analysis:

> (1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties.

Fund for Animals, Inc. v. Norton, 322 F.3d 728, 731 (D.C. Cir. 2003) (internal quotation marks omitted).

Finally, "because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, he must satisfy the standing requirements imposed on those parties." Id. at 732 (quoting City of Cleveland v. Nuclear Regul. Comm'n, 17 F.3d 1515, 1517 (D.C. Cir. 1994)). "To establish standing under Article III, a prospective intervenor—like any party—must show: (1) injury-in-fact, (2) causation, and (3) redressability." Norton, 322 F.3d at 732–33 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).

## **ANALYSIS**

In Rule 24(a)(2) intervention cases, the Court must commence its "analysis with a discussion of standing because, of course, that implicates [the Court's] jurisdiction." Deutsche Bank Nat'l Tr. Co. v. FDIC, 717 F.3d 189, 191 (D.C. Cir. 2013); see Cnty. of San Miguel v. MacDonald, 244 F.R.D. 36, 43 (D.D.C. 2007). The Court thus begins its analysis with standing, then assesses whether CooperPriest satisfies the tests for either intervention of right under Rule 24(a) or permissive intervention under Rule 24(b), and concludes by briefly discussing whether this case requires joinder under Rule 19.

### I.    Standing

Because the Court concludes that CooperPriest has not suffered an injury-in-fact, the Court begins and ends its standing analysis with that requirement.  An injury-in-fact requires "a showing of an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Deutsche Bank, 717 F.3d at 193 (citing Lujan, 504 U.S. at 560).  In the context of its Rule 24(a)(2) intervention argument, CooperPriest appears to proffer three legally protected interests that the adjudication of HRH and Travelers's breach of contract action would invade absent its intervention.[2]  None is persuasive.  CooperPriest fails to demonstrate a legally protected interest arising out of the insurance policy between HRH and Travelers, and even if CooperPriest has a legally protected interest in either the physical property damaged by the fire or the insurance proceeds that HRH seeks from Travelers, the adjudication of the action between HRH and Travelers is not a concrete or imminent invasion of those interests. The Court addresses each alleged injury in turn.

### A.  Insurance Policy Interest

CooperPriest first argues that it has a legally protected interest in the insurance policy between HRH and Travelers because it should have been named as an insured party on that contract.  CooperPriest alleges that HRH's lease required HRH to obtain and name CooperPriest as an insured on a policy for "public liability and property damage." See Mem. at 6 (quoting Lease

---

[2] The D.C. Circuit has indicated that the analyses for standing, particularly the injury-in-fact requirement, and for the legally protectable interest requirement of the intervention of right test overlap, because a movant who demonstrates Article III standing has demonstrated a "legally protectable interest" under Rule 24(a). See, e.g., City of Cleveland, 17 F.3d at 1517 (noting Rule 24(a)(2)'s "gloss" requiring not merely "any interest . . . but only [] a legally protectable one" is "required by Article III of the Constitution"); Jones v. Prince George's Cnty., 348 F.3d 1014, 1018–19 (D.C. Cir. 2003) ("[B]ecause [movant] has suffered a cognizable injury sufficient to establish Article III standing, she also has the requisite interest under Rule 24(a)(2)."); see also Deutsche Bank, 717 F.3d at 194 (prudential standing requirements "could be thought similar to" Rule 24(a)'s requirement that "a proposed intervenor must have an interest relating to the property or transaction at issue" (internal quotation marks omitted)).  This Court therefore considers courts' analyses of legally protectable interests in its standing analysis.

§ 13.01).  On that basis, CooperPriest contends that it has a legally protected interest in the breach of insurance contract action that non-intervention would invade.  See id. at 7.

Travelers and HRH disagree.  Travelers argues that because "CooperPriest is not insured by the Policy," CooperPriest has no legally protected interest in an "action concern[ing] the availability of coverage under the Policy."  Defs.' Opp'n at 4–5.  HRH similarly contends that the lease's mere requirement to list CooperPriest as an insured does not make CooperPriest an insured or a beneficiary of the insurance policy and therefore does not create a legally protected interest. See Pls.' Opp'n at 4–5.  Instead, if HRH failed to secure adequate insurance coverage, then the lease contract provides CooperPriest's remedy: "obtain insurance coverage on behalf of [HRH] and bill [HRH] for said insurance."  See id. (quoting Lease § 13.01).  In HRH's view, neither CooperPriest nor the Court can "rewrite the insurance policy" to make CooperPriest an insured party, and CooperPriest therefore has no legally protected interest pursuant to the insurance policy. See id. at 5.

The insurance policy contract between HRH and Travelers does not provide CooperPriest with a legally protected interest in the breach of insurance contract dispute.  It is uncontested that CooperPriest is not an insured party on the contract.  See Certified Policy WS449050 [ECF No. 11-2] at 1–2.  CooperPriest cites no authority for the proposition that an entity that should be a party to an insurance contract but is not nevertheless has a legally protected interest in the resolution of an alleged breach of that contract.  See, e.g., Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co., 81 F. Supp. 3d 1, 8 (D.D.C. 2015) (dismissing plaintiffs' breach of contract claim because, as they were "not parties to the contract," they lacked Article III standing); Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc., 425 F.3d 1308, 1311 (11th Cir. 2005) (movant was "not a party to the Mt. Hawley insurance policy and ha[d] no legally protectable interest in that insurance

policy"); Barhoumi v. Obama, 234 F. Supp. 3d 84, 86 (D.D.C. 2017) ("But an interest is not 'legally protected' or cognizable for the purpose of establishing standing when its asserted legal source . . . does not exist.").

Even if the Court construed CooperPriest's motion to argue that the Court should treat CooperPriest as a third-party beneficiary of the contract, that argument also fails. To create a third-party beneficiary, D.C. law requires that "the contracting parties must have had an express or implied intention to benefit directly the party claiming such status." [3] Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp., Civ. A. No. 20-784 (JDB), 2020 WL 4201661, at *4 (D.D.C. July 22, 2020) (cleaned up) (quoting Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp., 944 A.2d 1055, 1064 (D.C. 2008)). That the third party has "[a]n indirect interest in the performance of the contractual undertakings is insufficient." Id. (cleaned up) (quoting Fort Lincoln, 944 A.2d at 1064).

CooperPriest does not allege that HRH and Travelers had an express or implied intention to directly benefit CooperPriest with the insurance contract. If anything, HRH's alleged failure to include CooperPriest on the policy despite a contractual obligation to do so indicates an intent not to benefit CooperPriest. And that CooperPriest as the landlord has an indirect interest in the performance of its tenant's insurance contract does not make CooperPriest a third-party beneficiary of the contract. See Inova, 2020 WL 4201661, at *4.

For these reasons, CooperPriest's interest in the insurance policy, if any, is not a basis for Article III standing to intervene. [4]

---

[3] A district court sitting in diversity must apply the substantive law of the state in which it sits. See, e.g., Klayman v. Barmak, 602 F. Supp. 2d 110, 115 (D.D.C. 2009) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).

[4] CooperPriest also lacks prudential standing to enforce the insurance contract. See Deutsche Bank, 717 F.3d at 194 (putative intervenors who were neither parties to nor third-party beneficiaries of contract "lack[ed] prudential

## B.  Physical Property Interests

CooperPriest's next argument is simple: Because CooperPriest owns some of the damaged property covered by the insurance contract that Travelers allegedly breached, CooperPriest has a "protectable interest" in the breach of contract action.[5]  See Mem. at 6.  But a legally protected interest requires an interest in the underlying dispute itself, not merely any tangential interest in related property.  See, e.g., Jones v. Prince George's Cnty., 348 F.3d 1014, 1018 (D.C. Cir. 2003) ("a concrete and cognizable interest in [the underlying] litigation . . . satisfies Article III's demands"); Norton, 322 F.3d at 733 (Mongolia's Natural Resources Department had cognizable interest in underlying APA claim because plaintiffs' requested relief would threaten "the primary source of funding" for Mongolia's conservation program); Cont'l Transfert Tech. Ltd. v. Fed. Gov't of Nigeria, Civ. A. No. 08-2026 (PLF), 2019 WL 3562069, at *5 (D.D.C. Aug. 6, 2019) (movant had standing because it "demonstrated a legal interest in the asset that is the subject of the pending attachment motion"); see also Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Assocs., 695 F.3d 1310, 1315 (Fed. Cir. 2012) (legally protectable interest is an "interest in the property affected by the case").

CooperPriest does not have such an interest.  The underlying dispute regards Travelers's handling of HRH's insurance claim; neither CooperPriest's ownership of the insured property nor the property itself is at issue.  See Am. Compl. ¶¶ 19–40.  Taken seriously, CooperPriest's argument would grant it a legally protected interest in every dispute that touches on its property in any manner—a broad view of a legally protected interest that other courts have rejected.  See, e.g.,

_____

standing to enforce [the contract]"); see also id. at 194 n.4 (noting prudential standing is "a threshold, jurisdictional concept," and "courts may consider third-party prudential standing even before Article III standing").

[5] The Court discusses CooperPriest's property interest in the insurance proceeds separately.

Mt. Hawley, 425 F.3d at 1311 & n.5; Wade v. Goldschmidt, 673 F.2d 182, 184–85 (7th Cir. 1982) (prospective intervenors' economic and environmental interests in the construction of a bridge did not support intervention in claim that the government had violated procedural requirements in deciding to construct the bridge). CooperPriest may have a legally protected interest in disputes that threaten its property interests, but this dispute does not do so.

CooperPriest also fails to establish that its interest, even if legally protected, would be injured absent intervention. An injury-in-fact requires "an invasion," or injury, of a legally protected interest that is concrete, particularized, actual or imminent, and not conjectural or hypothetical. Deutsche Bank, 717 F.3d at 193 (citing Lujan, 504 U.S. at 560). CooperPriest does not suggest that the adjudication of the breach of contract action would invade its physical property ownership interests at all, let alone imminently or concretely. Cf. Cont'l Transfert, 2019 WL 3562069, at *4–5 (finding alleged invasion of ownership interest where movant claimed ownership over the same bank account for which the plaintiff sought a writ of attachment in the underlying arbitral award action). Nor could it. CooperPriest is the only entity claiming ownership of the premises and property therein. HRH does not seek ownership or possession of the building or fixtures.[6] See generally Am. Compl. ¶¶ 49, 54, 61, 65. Moreover, CooperPriest has already evicted HRH and repossessed the premises, including the building, fixtures, and personal property that remained after the fire. See Pls.' Opp'n at 6; Am. Compl. ¶ 56. CooperPriest therefore already possesses the physical property over which it asserts an ownership interest, and no claim in the underlying breach of contract action challenges CooperPriest's ownership of that property.

---

[6] For this analysis, the Court does not consider the positions that HRH has taken or may take regarding this property in other litigation. See generally Virginia Compl., D.C. Compl.

For these reasons, CooperPriest's physical property interests are not a basis for Article III standing to intervene.

### C. Lien and Security Interest

CooperPriest next argues that its legal claim to the insurance proceeds themselves is a legally protected interest.  See Mem. at 7–8.  CooperPriest contends that the underlying litigation is a breach of contract action over the failure to pay insurance proceeds, and CooperPriest has a lien on and security interest in the insurance proceeds.[7]  CooperPriest thus argues that this is a legally protected interest that would be injured if this Court adjudicates the rights to those proceeds absent CooperPriest.

To protect CooperPriest's right to secure rent and other payments from HRH, the lease between CooperPriest and HRH grants CooperPriest a security interest in, among other things, "all proceeds of any insurance which may accrue to [HRH] by reason of damage to or destruction of any such property."  Mem. at 7 (quoting Lease § 26.16).  CooperPriest argues that "HRH was substantially behind in its rent payments" such that these interests are enforceable.  See id. at 8.  HRH disputes that it owes CooperPriest any rent and underscores that no court has adjudicated that issue.  See Pls.' Opp'n at 5–6; Decl. of Rachel Traverso ¶ 7, CooperPriest 237, LLC v. Hartford Underwriters Ins. Co., Civ. A. No. CL-2023-11608 (Va. Cir. Ct. Mar. 8, 2024) [ECF No. 23-1] (stating CooperPriest "never stated that back due rent was owed, or provided any notice of rent owed or notice of default as required under the lease" until recent litigation).  Because there is an unresolved dispute as to whether HRH breached the lease, HRH argues that "there is no valid

---

[7] A "security interest" is "any interest in property which secures payment or performance of an obligation." Anderson Bros. Ford v. Valencia, 452 U.S. 205, 210 (1981) (quoting 12 C.F.R. § 226.2(gg) (1980)); see also DCFS USA, LLC v. Dist. of Columbia, 803 F. Supp. 2d 29, 41 & n.9 (D.D.C. 2011).  A lien "is a legal claim to an interest in property as security for payment of a debt."  Unico Servs., Inc. v. United States, 71 Fed. Cl. 464, 465 n.3 (2006).

debt over which a lien could attach here" and CooperPriest thus has no legally protected interest in the insurance proceeds.  See Pls.' Opp'n at 6.

Courts generally conclude that a movant's economic interest in a separate recovery from one party to the underlying dispute is insufficient for intervention.  Many courts attribute this position to the Eleventh Circuit's analysis in Mount Hawley Insurance Company v. Sandy Lake Properties, Incorporated, 425 F.3d 1308 (11th Cir. 2005).  In that case Mt. Hawley, an insurer, filed a declaratory action against two companies that held a Mt. Hawley insurance policy, arguing that the companies had waived coverage under the policy such that Mt. Hawley had no duty to defend or indemnify them in an ongoing wrongful death action.  See 425 F.3d at 1309–10.  The plaintiff in the wrongful death action, the decedent's personal representative, moved to intervene in the declaratory judgment action.  See id. at 1310.  The district court denied the motion to intervene and the Eleventh Circuit affirmed, concluding that the personal representative had "no legally protectable interest" in the declaratory judgment action.  Id. at 1311.  The Court explained that a legally protectable interest must "derive[] from a legal right" and requires "something more than an economic interest."  See id. (internal quotation marks omitted).  And the personal representative had only a "purely economic" interest in whether the underlying action would reduce the money "from which he can recover his wrongful death damages."  See id.

Multiple federal courts of appeals have acknowledged or applied the Mt. Hawley analysis to similar economic interests.  The D.C. Circuit, for example, has noted that "other circuits have generally concluded that a party may not intervene in support of a defendant solely to protect judgment funds that the party wishes to recover itself."  Deutsche Bank, 717 F.3d at 195 (citing the Eighth, Ninth, and Eleventh Circuits); see also Parker v. John Moriarty & Assocs., 319 F.R.D. 18, 22 (D.D.C. 2016) (concluding movant lacked prudential standing because her interest in the

underlying action was merely "ensuring that she is able to recover for her purported damages arising out of" a separate claim against the plaintiff). The Seventh Circuit has similarly concluded that "the fact that [the movant] might anticipate a benefit from a judgment in favor of one of the parties," such as by being a creditor, "does not entitle [him] to intervene." Flying J, Inc. v. Van Hollen, 578 F.3d 569, 571 (7th Cir. 2009) (citing cases from the Third, Fifth, Seventh, Eighth, and Ninth Circuits).

On one hand, CooperPriest makes the same argument as the movants in Mt. Hawley and Parker: CooperPriest would suffer an injury-in-fact if this Court adjudicated the breach of contract dispute without it, because this Court may decide whether to award insurance proceeds to HRH, which impacts the amount of proceeds that CooperPriest can later recover from HRH pursuant to the lease contract. Under those cases, however, this "purely economic" interest in a later recovery from HRH is insufficient. See Mt. Hawley, 425 F.3d at 1311 (insufficient for intervention); Parker, 319 F.R.D. at 23 (insufficient for prudential standing).

On the other hand, CooperPriest is more than a general creditor. CooperPriest asserts a legal claim to the insurance proceeds. See United States v. Huntington Nat'l Bank, 682 F.3d 429, 434 (6th Cir. 2012) (contrasting the interests of a security interest holder and a general creditor). This makes CooperPriest's interest perhaps more akin to two other cases. In Deutsche Bank, the D.C. Circuit concluded that a group of bank noteholders had a legally protected economic interest where the FDIC recognized the notes as "legitimate liabilities of the Washington Mutual receivership," meaning the noteholders were entitled to payment from a receivership fund that the underlying action could reduce or exhaust. See 717 F.3d at 190–91, 193; see also id. at 195 (indicating "a creditor's general economic interest in receivership funds" may be sufficient to support Article III standing but not intervention). And in Diaz v. Southern Drilling Corporation,

427 F.2d 1118 (5th Cir. 1970), the Fifth Circuit concluded that the government's statutory tax lien on the defendant drilling company's profits from a particular contract was a "legally cognizable interest" in an underlying action where plaintiffs sought to recover commissions from the same profits. See id. at 1121, 1124. But CooperPriest differs from the intervenors in both cases: it does not have a legally recognized interest in the insurance proceeds. CooperPriest is still litigating that interest over HRH's objection. Additionally, the insurance proceeds do not now and may never exist—a far cry from the intervenors' undisputed interests in identifiable and existing property in Deutsche Bank and Diaz.

CooperPriest's interests are instead most similar—in fact, nearly identical—to those of the prospective intervenors in Wellington Hills Park, LLC v. Assurance Company of America, Civ. A. No. 10-0916 (JLR), 2011 WL 1344249 (W.D. Wash. Apr. 7, 2011), and Buckley Towers Condominium, Incorporated v. QBE Insurance Corporation, Civ. A. No. 07-22988 (EGT), 2008 WL 11318164 (S.D. Fla. Nov. 4, 2008). In both cases, plaintiffs sued insurance companies alleging the companies had breached insurance policy contracts by failing to pay for property damage that the plaintiffs claimed the policies covered—the same claims that HRH brings against Travelers. Compare Wellington, 2011 WL 1344249, at *1, and Buckley, 2008 WL 11318164, at *1, with Am. Compl. ¶ 1. In both cases, third-party creditors (or an agent of the creditor) moved to intervene, claiming that they held security or lien interests in the plaintiffs' property, including insurance proceeds, pursuant to separate contracts between the plaintiffs and the third parties— just as CooperPriest argues here. Compare Wellington, 2011 WL 1344249, at *2, and Buckley, 2008 WL 11318164, at *1–2; with Mem. at 7–8. Both courts denied intervention, concluding that

the third parties lacked legally protectable interests in the underlying breach of contract disputes. See Wellington, 2011 WL 1344249, at *2–3; Buckley, 2008 WL 11318164, at *2–3.[8]

CooperPriest's lien and security interest argument fails under this analysis. As in these cases, CooperPriest's only interest is to ensure "that any such funds awarded to [HRH] do in fact become" its property. See Wellington, 2011 WL 1344249, at *3 (cleaned up); Buckley, 2008 WL 11318164, at *3. In other words, CooperPriest "intends only to assure that [it] can seek post-judgment relief from this court in the event that [HRH] prevails" or simultaneous relief through a declaratory judgment recognizing its lien. Buckley, 2008 WL 11318164, at *3; see Intervenor CooperPriest 237, LLC's Third-Party Compl. [ECF No. 25-1] ("CooperPriest Compl.") ¶ 8.[9] And this interest is insufficiently related to the underlying breach of contract and failure to pay claims. See Wellington, 2011 WL 1344249, at *3; Buckley, 2008 WL 11318164, at *3.

Moreover, this Court's adjudication of whether Travelers breached its contract with HRH will neither "impair [CooperPriest's] rights" to seek the insurance proceeds from HRH under the lease contract nor "automatically entitle [CooperPriest] to" the insurance proceeds. See Buckley, 2008 WL 11318164, at *3; see also Wellington, 2011 WL 1344249, at *3. Furthermore, the Buckley court also observed that the third-party creditor's failure to first secure a declaratory judgment recognizing its lien on the insurance proceeds rendered the interest "speculative and

---

[8] Three judges in the Central District of California have concluded that a security interest in property is a legally protectable interest. See Giancaspro v. Network Travel Experiences, Inc., Civ. A. No. 22-5745 (JFW), 2022 WL 19569513, at *5 (C.D. Cal. Nov. 3, 2022).

[9] CooperPriest lodged a third-party complaint with its reply seeking a declaratory judgment recognizing its lien on and security interest in HRH's property, including insurance proceeds, and an equitable lien over HRH and Traveler's breach of contract action. See CooperPriest Compl. ¶¶ 8, 14. HRH and Travelers contend that this Court can deny CooperPriest's motion to intervene on the basis that CooperPriest failed to attach this complaint to its original motion. Pls.' Opp'n at 2 (citing Fed. R. Civ. P. 24(c) & Local Rule 7(j)); Defs.' Opp'n at 5–6; see Friends of the Earth v. EPA, Civ. A. No. 12-0363 (ABJ), 2012 WL 13054264, at *2 n.4 (D.D.C. Apr. 11, 2012) ("[T]he Court could deny the motion [to intervene] based on that failure to comply with the federal rules alone."); United States v. Facebook, Inc., 456 F. Supp. 3d 105, 114 n.9 (D.D.C. 2020). Because the Court concludes that consideration of the third-party complaint will not prejudice HRH or Travelers and the Court will deny the motion to intervene on other grounds, the Court has considered the proposed complaint.

contingent and not concrete enough to warrant intervention." 2008 WL 11318164, at *3. CooperPriest similarly has not yet secured a declaratory judgment recognizing its lien. See Pls.' Opp'n at 6; see also Virginia Compl. ¶ 164. This interest is thus not only insufficiently related to the underlying litigation but also "speculative and contingent and not concrete enough to warrant intervention." Buckley, 2008 WL 11318164, at *3.

Although it is a closer call whether CooperPriest's security and lien interest in the insurance proceeds is a legally protected interest in this breach of insurance contract action, in part due to courts' blending of the standing and Rule 24(a)(2) intervention terminology and analyses, this precise question is immaterial. As with its other proffered interests, CooperPriest has not demonstrated that non-intervention would invade, or injure, this interest, and CooperPriest therefore lacks Article III standing.

CooperPriest argues in a conclusory fashion that if this Court adjudicates the breach of insurance contract action without it and determines that Travelers owes insurance proceeds to HRH, then HRH can recover those proceeds without further contest. See Mem. at 9. This Court disagrees that such a situation would injure CooperPriest's asserted interest in the insurance proceeds.[10] This Court's determination as to whether Travelers breached the insurance contract and must pay insurance proceeds to HRH neither entitles CooperPriest to those funds nor impairs CooperPriest's ability to seek them from HRH under the lease contract. See Buckley, 2008 WL 11318164, at *3; Wellington, 2011 WL 1344249, at *3. It is not as if CooperPriest and HRH assert parallel claims against Travelers for the same finite funds—a situation that might injure CooperPriest's interest in those funds. See, e.g., Corby Recreation, Inc. v. Gen. Elec. Co., 581 F.2d 175, 177 (8th Cir. 1978) (approving intervention because movant demonstrated impairment

---

[10] CooperPriest does not contend that a ruling for Travelers—a ruling that no insurance proceeds are owed— would constitute an injury. See Mem. at 9.

of interest where movant and plaintiff sought to assert identical claims against the defendant such that their claims were "in direct competition" for the disputed funds); see also Diaz, 427 F.2d at 1121, 1124 (government asserted tax lien over the same profits from which plaintiffs sought commissions).  CooperPriest does not assert any claims against Travelers, and nor could it. CooperPriest is not a party to the insurance contract and thus has no remedy from Travelers.

CooperPriest seems to argue instead that absent intervention, it could only vindicate its interest in the insurance proceeds through a separate legal action against HRH, and a separate action would not sufficiently protect its rights.  But the mere fact that a movant must file a second lawsuit to vindicate its interest is not an invasion; in fact, even where the first lawsuit may itself "impede a third party's ability to recover in a separate suit," that possibility "ordinarily does not give the third party a right to intervene." Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 221 (3d Cir. 2005) (emphasis added) (quoting Mountain Top Condo. Assoc. v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 366 (3d Cir. 1995)).  Furthermore, CooperPriest has already sued HRH to enforce its rights to the insurance proceeds and continues to litigate that claim. CooperPriest proffers no reason why this Court's ruling in this breach of insurance contract action would impair CooperPriest's ability to continue pursuing recovery from HRH under the lease contract.

Finally, CooperPriest fails to demonstrate an injury-in-fact for yet another reason: an invasion of CooperPriest's interest in the insurance proceeds, if it exists, is neither concrete nor imminent.  The alleged invasion will only happen if two contingencies occur: a court concludes that CooperPriest has a lien on the insurance proceeds pursuant to the lease contract, and HRH prevails on its failure to pay claim and this Court orders Travelers to pay insurance proceeds to HRH.  When an invasion of a legally protected interest depends on the occurrence of multiple

speculative and independent actions—here, legal interpretations of two contracts that "must come out a specific way before [CooperPriest's] interests are even at risk"—"it seems unlikely that the prospect of harm is actual or imminent."[11]  Crossroads Grassroots Policy Strategies v. FEC, 788 F.3d 312, 317–18 (D.C. Cir. 2015) (quoting Deutsche Bank, 717 F.3d at 193); see also, e.g., Mt. Hawley, 425 F.3d at 1311; Buckley, 2008 WL 11318164, at *3.

After careful consideration of the case law both within this Circuit and elsewhere, the Court returns to the initial question whether CooperPriest has demonstrated an injury-in-fact as required for Article III standing.  Regardless of whether this Court determines that CooperPriest's proffered interests are not legally protected, would not be concretely and imminently injured absent intervention, or both, the result is the same: CooperPriest is not in "imminent danger of suffering injury in fact."  See Roeder v. Islamic Republic of Iran, 333 F.3d 228, 233–34 (D.C. Cir. 2003). The Court will therefore deny the motion to intervene for lack of standing.

## II.      Intervention of Right

Even if CooperPriest had Article III standing, the Court would still deny its motion for intervention of right.  The fourth factor of the Rule 24(a)(2) test requires that the prospective intervenor demonstrate that its interest is not adequately represented by the current parties.  See Norton, 322 F.3d at 731; Fed. R. Civ. P. 24(a)(2).  CooperPriest fails to make this showing.

"Although an intervenor's burden of showing inadequacy of representation is minimal, a presumption of adequate representation exists if both the intervenor and existing party have the same ultimate objective."  Cobell v. Jewell, Civ. A. No. 96-01285 (TFH), 2016 WL 10704595, at *2 (D.D.C. Mar. 30, 2016) (cleaned up).  The movant then bears the burden to "rebut this

---

[11] Although it is not a harm that CooperPriest proffers, the Court recognizes that a ruling for Travelers in the breach of insurance contract action could mean that there are no insurance proceeds for CooperPriest to recover.  This outcome, however, is similarly contingent upon multiple independent events and is thus neither concrete nor imminent.

presumption by demonstrating special circumstances that make the representation inadequate, such as adversity of interest, collusion, or nonfeasance." Id. (internal quotation marks omitted).

Here, because both parties "seek precisely the same result in the underlying litigation— maximum insurance coverage" from Travelers—there is a presumption that HRH adequately represents CooperPriest's interests. See Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co., 105 F.R.D. 106, 112 (D.D.C. 1985). HRH seeks maximum coverage for its losses, and CooperPriest seeks maximum coverage for HRH so that CooperPriest can later recover that from HRH. The burden is thus on CooperPriest to rebut this presumption of adequate representation.

CooperPriest argues that because HRH "breached the lease by failing to name Intervenor CooperPriest as an insured," has taken adverse positions to CooperPriest in two other litigations, and will likely "seek to exclude CooperPriest . . . from either the judgment or the settlement" in this case, HRH does not adequately represent its interests. See Mem. at 10; Reply at 4. These arguments miss the mark. Adequate representation does not turn on whether HRH breached a separate agreement with CooperPriest or HRH agrees that CooperPriest is ultimately entitled to the proceeds. Rather, the inquiry is focused only on whether HRH would adequately represent CooperPriest's interest in this underlying litigation, which is to seek the maximum insurance proceeds from Travelers. CooperPriest does not explain how HRH's failure to list CooperPriest on the lease or the parties' litigation over CooperPriest's security and lien interest demonstrates that HRH would inadequately represent the mutual interest of seeking maximum insurance proceeds from Travelers.

Indeed, the fact that HRH disputes CooperPriest's interest in the insurance proceeds makes the case of adequate representation stronger. Because HRH contends that it alone is entitled to the insurance proceeds, HRH is incentivized to seek the maximum amount. This is a contrast from

Midland Plastering Company v. M&I Marshall & Ilsley Bank, Civ. A. No. 06-1251 (JPS), 2008 WL 4282592 (E.D. Wis. Sept. 17, 2008), where the court granted intervention for the third-party agent of a bank that held a lien on Midland's assets because Midland had acknowledged that the bank was entitled to the proceeds that Midland sought, and hence Midland had less financial incentive "to pursue [the] case as zealously" as it otherwise would.  Id. at 4.

Here, accordingly, even if CooperPriest had standing, it would fail the test for intervention of right.

### III.    Permissive Intervention

The Court next considers whether CooperPriest could intervene through Rule 24(b) permissive intervention.  "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Although CooperPriest seeks only intervention of right, see Mem. at 5, the Court may consider sua sponte whether CooperPriest meets the test for permissive intervention. See, e.g., Cobell, 2016 WL 10704595, at *2; Qualus Corp. v. Wilson, Civ. A. No. 23-352, 2023 WL 5745438, at *3 (S.D. Ohio Sept. 6, 2023); Linkous v. Am. Alt. Ins. Corp., Civ. A. No. 7:11-278 (JCT), 2011 WL 4894233, at *1 n.1 (W.D. Va. Oct. 13, 2011).[12]

For permissive intervention, the movant must demonstrate that (1) "an independent ground for subject-matter jurisdiction exists," (2) "its motion is timely," and (3) "it has a claim or defense that has a question of law or fact in common with the main action." Hughes v. Abell, Civ. A. No. 09-220 (JDB), 2014 WL 12787807, at *2 (D.D.C. Feb. 10, 2014) (citing EEOC v. Nat'l Children's Ctr., 146 F.3d 1042, 1046 (D.C. Cir. 1998)).

---

[12] Although CooperPriest lacks Article III standing, which is required for intervention of right, "it remains an open question in this circuit whether Article III standing is required for permissive intervention." Defs. of Wildlife v. Perciasepe, 714 F.3d 1317, 1327 (D.C. Cir. 2013) (cleaned up).

CooperPriest does not meet the third criterion: its claim for a declaratory judgment against HRH does not share a common question of law or fact with HRH's breach of contract and tort claims against Travelers. In its proposed third-party complaint, CooperPriest seeks a declaratory judgment recognizing its "rights in, lien in, and security interest in, and right to payment from the insurers for" damage to (1) HRH's business personal property, the personal property of others, the building, fixtures, and HRH's improvements and betterments; and (2) its rights to any insurance proceeds that HRH receives "by reason of damage to or destruction" of the property. CooperPriest Compl. ¶ 8 (internal quotation marks omitted). CooperPriest's complaint is composed of alleged facts related to CooperPriest's relationship with HRH and the lease contract. See id. ¶¶ 1–6.

This claim does not share a legal or factual question with HRH's breach of contract and tort claims against Travelers. See Hughes, 2014 WL 12787807, at *6. First, as to the legal claims, HRH contends that Travelers breached the insurance contract between Travelers and HRH, whereas CooperPriest contends that HRH breached its lease contract with CooperPriest. See Am. Compl. ¶ 46; Mem. at 10. HRH seeks damages from Travelers, while CooperPriest seeks judicial recognition of its lien on HRH's property. See Am. Compl. ¶ 49; CooperPriest Compl. ¶ 8. These claims involve interpretations of different contracts between different parties seeking different remedies.

The claims do not share any questions of fact, because they center on the actions of different parties at different times. CooperPriest's claim centers on whether HRH breached the parties' lease contract. That question may require factual discovery into legal documents describing HRH's debts, if any; the debts of its predecessors-in-interest; and the scope of HRH's and others' guarantees of those debts, ultimately to assess whether HRH owed CooperPriest approximately $152,000 in outstanding rent. See Mem. at 1–5. These facts occurred prior to

September 14, 2021.  HRH's breach of insurance contract claim, in contrast, turns on that policy and Travelers's actions and alleged inaction during the processing of HRH's claim, which occurred after September 16, 2021.  See Am. Compl. ¶¶ 19–40.

Because CooperPriest's declaratory judgment claim does not contain a common question of law or fact with HRH's claims against Travelers, CooperPriest cannot permissively intervene.

### IV.    Joinder

Finally, the Court briefly addresses CooperPriest's claim, raised summarily and for the first time in reply, that its "security interest makes it a necessary party to this litigation pursuant to Rule 19."  Reply at 2.  Rule 19 provides that a court must join a party if joinder would not destroy subject-matter jurisdiction and one of the following is true: (A) absent joinder, "the court cannot accord complete relief among existing parties," or (B) the movant "claims an interest relating to the subject of the action" and his absence may (i) "as a practical matter impair or impede [his] ability to protect the interest" or  (ii) "leave an existing party subject to a substantial risk of incurring" duplicitous or inconsistent obligations.  Fed. R. Civ. P. 19.

CooperPriest fails this test. As to prong A, the Court may "accord complete relief" for the breach of a contract between HRH and Travelers, because they are the only parties to that contract.  See, e.g., 16th & K Hotel, LP v. Commonwealth Land Title Ins. Co., 276 F.R.D. 8, 14–15 (D.D.C. 2011).  For prong B(i), because CooperPriest's interest in the proceeds "is wholly contingent on the success of [HRH's] claim" to the proceeds, CooperPriest's interest is "not impaired but rather protected by the fact that [HRH] is asserting a claim" against Travelers.  See id. at 15.  Finally, under prong B(ii), there is no risk of duplicitous litigation or inconsistent obligations for HRH or Travelers.  CooperPriest cannot sue Travelers for the proceeds, because CooperPriest is not a party to the insurance contract.  And a suit between CooperPriest and HRH over the proceeds is neither

duplicitous nor inconsistent because it would center on a different contract (the lease) and assess different contractual obligations (HRH vis-à-vis CooperPriest).

## **CONCLUSION**

A prospective intervenor of right must both establish Article III standing and meet the four-factor test set forth in Rule 24(a)(2).  See, e.g., Norton, 322 F.3d at 731–32.  CooperPriest fails to demonstrate that it would suffer an injury-in-fact absent intervention, which is fatal to both Article III standing and intervention of right.  See Nat'l Wildlife Refuge Ass'n v. U.S. Army Corps. of Eng'rs, Civ. A. No. 22-3498 (JDB), 2023 WL 11743640, at *3 (D.D.C. Apr. 6, 2023).  Additionally, because CooperPriest's claim for a declaratory judgment against HRH does not raise a common question of law or fact with any of HRH's claims against Travelers, CooperPriest cannot benefit from permissive intervention.  See Fed. R. Civ. P. 24(b).  Finally, CooperPriest is also not a necessary party to the breach of insurance contract action requiring joinder.  See Fed. R. Civ. P. 19.  The Court will therefore deny CooperPriest's motion to intervene.  A separate order has been filed.

/s/
JOHN D. BATES
United States District Judge

Dated: November 6, 2024