**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**HRH SERVICES, LLC, et al.,**

     **Plaintiffs,**

       **v.**

**TRAVELERS INDEMNITY CO., et al.,**

     **Defendants.**

**Civil Action No. 23-2300 (JDB)**

---

### MEMORANDUM OPINION

This case arises from a contractual dispute between the operators of the Washington, D.C. restaurant The Alibi and the companies that had allegedly insured the premises and handled the subsequent insurance claim. After a September 2021 fire caused substantial damage to The Alibi, plaintiffs HRH Services, LLC and Rachel Traverso submitted an insurance claim to co-defendant Northfield Insurance Company ("Northfield"), which co-defendant Travelers Indemnity Company ("Travelers") allegedly investigated and processed.[1] HRH sued the defendants "for failing to timely process and pay an insurance claim, and for [their] bad faith to effectuate prompt, fair, and equitable settlement of a claim submitted in which coverage is clear." See Pls.' First Am. Compl. [ECF No. 9] ("Am. Compl.") ¶ 1.

Before the Court is the defendants' partial motion to dismiss. For the reasons that follow, the Court will grant the motion in part and deny the motion in part.

---

[1] The Court uses "HRH" to refer to HRH and Ms. Traverso collectively and "defendants" to refer to Northfield and Travelers collectively, except where distinction is required.

**BACKGROUND**

## I.     Factual Background

The following facts derive from HRH's complaint and the insurance policy.  See Gun Owners of Am., Inc. v. FBI, 594 F. Supp. 3d 37, 42 (D.D.C. 2022); Real World Media LLC v. Daily Caller, Inc., Civ. A. No. 23-1654 (JDB), 2024 WL 3835351, at *3 (D.D.C. Aug. 14, 2024) (explaining that a court may consider documents not attached to a complaint if they are "referred to in the complaint and integral to the plaintiff's claim" (internal quotation omitted)).  The Alibi is a Washington, D.C. restaurant owned by Richard and Rachel Traverso through HRH, their LLC. Am. Compl. ¶ 4.

In November 2020, HRH took out a commercial general liability and property insurance policy for the premises.  Id. ¶ 9.  HRH claims that it took out the policy from both Travelers and Northfield.  See, e.g., ¶¶ 11–13.  The first page of HRH's policy lists "Northfield Insurance Company" as the insuring company.  Certified Policy WS449050 [ECF No. 11-2] ("Policy") at 1. Every page of the policy states "TRAVELERS DOC MGMT" in the bottom right corner.  See id. at 1–130.

The policy's effective period ran from November 18, 2020, to November 18, 2021.  See Am. Compl. ¶ 9; Policy at 2.  The policy covered, with some restrictions, "direct physical loss or damage" to the property from covered events such as a fire ("Building and Property Coverage"), "actual loss of Business Income [HRH] sustained due to the necessary 'suspension' of [HRH's] 'operations' during the 'period of restoration,'" ("Business Income Coverage"), and replacement costs for "Tenants' Improvements and Betterment."  See Am. Compl. ¶¶ 11–13 (alterations in original).

On September 14, 2021, there was a fire at The Alibi.  Id. ¶ 14.  HRH filed an insurance claim under the policy two days later.  Id. ¶ 18.  On September 21, a forensic analyst from Travelers contacted HRH regarding the claim.  See id. ¶ 20.  Travelers inspected the premises twice in the following weeks, and after the second inspection Travelers and HRH "reached agreement as to what items/areas will fall under" certain portions of the policy.  Id. ¶¶ 21, 23.  Travelers requested that HRH produce multiple documents to assist in the investigation of the business interruption portion of the claim, and HRH complied.  Id. ¶ 20.

In mid-October, the parties' relationship began to break down.  On October 13, the defendants' investigator "prohibited HRH's adjustor from touching, moving, or opening anything within the Premises," which HRH claims "prevented HRH from completing a thorough inventory and . . . salvaging its property." Id. ¶ 24.[2]  Following that event, HRH alleges a series of multi-month delays and lapses in communication from the defendants despite allegedly having reached agreement on what portions of the policy covered which property.  HRH contends that it did not receive an update on the investigation for approximately three months.  Am. Compl. ¶¶ 25–26.  Next, although Clay Kennedy, a general adjuster at Travelers, told HRH multiple times in January 2022 that he believed that he would soon have an update on the status of the investigation, including whether it was ongoing, he did not provide an update.  See id. ¶¶ 26–30.  It is unclear whether he has ever provided an update.

---

[2] In its amended complaint, HRH at times refers to actions as taken by both defendants.  See, e.g., Am. Compl. ¶¶ 21–26.  Northfield contends that all "actions and inactions . . . should be read as being made against Northfield only," because Travelers is not a properly named defendant.  See Defs.' Mem. Law Supp. Partial Mot. Dismiss Pls.' Am. Compl. [ECF No. 11-1] at 3.  At the motion to dismiss stage, the Court must construe the complaint "in the light most favorable to the plaintiff," and "the court must assume the truth of all well-pleaded allegations." Howard Univ. v. Watkins, 857 F. Supp. 2d 67, 71 (D.D.C. 2012) (internal quotation marks omitted).  The Court therefore accepts HRH's characterization as to which defendant(s) took certain actions.

Then in April 2022, the defendants' attorney requested that HRH produce various additional documents, including some that HRH contends were "wholly unrelated to the Claim or the Policy, such as individual tax returns for the owners, personal credit card statements, and personal bank statements" and that the Traversos be examined under oath. See id. ¶ 31. HRH agreed to the requests and asserts that it tried to contact the defendants multiple times to timely schedule the examinations but received no response. See id. ¶¶ 32–33. The defendants' attorney eventually examined the Traversos under oath on August 23, 2022. Id. ¶¶ 24–25. Richard completed his examination, but Rachel suspended hers "[b]ecause the questioning went far afield from the Claim," and she then sought to retain a lawyer. See id. ¶¶ 34–35. Finally, beginning in December 2022, HRH contacted the defendants "on several occasions" to reschedule Rachel's examination but the defendants allegedly ignored those requests. See id. ¶¶ 37–38. Her examination had not occurred as of the filing of this action in September 2023. See id. ¶ 38.

## II.    Procedural Background

In June 2023, HRH sued defendants in D.C. Superior Court, and the defendants removed the case to federal court. See Defs.' Notice of Removal (Aug. 9, 2023) [ECF No. 1] ¶ 1. HRH's amended complaint centers on allegations that the defendants failed to reasonably and timely investigate and process HRH's September 2021 insurance claim and that the defendants' refusal to permit HRH to touch or move its personal property on the premises led to the destruction or other loss of that property. See Am. Compl. ¶¶ 1, 57, 60. Those allegations give rise to four claims: the defendants (1) breached the insurance contract, (2) breached the implied covenant of good faith and fair dealing, (3) breached their fiduciary duties to HRH, and (4) negligently handled the insurance claim. See id. ¶¶ 41–64. HRH seeks compensatory, consequential, and punitive damages, as well as attorney's fees and costs, and interest and expenses. See id. ¶ 66.

In response to HRH's amended complaint, the defendants filed a partial motion to dismiss. See Defs.' Partial Mot. Dismiss Pls.' Am. Compl. [ECF No. 11] ("Mot."). To start, the defendants contend that the Court should dismiss Counts Two through Four—the breach of the implied covenant of good faith and fair dealing and tort claims—for failure to state a claim. See Defs.' Mem. Law in Supp. Mot. [ECF No. 11-1] ("Mem.") at 2. The defendants next contend that the Court should dismiss all counts as pled by Rachel Traverso and all claims as pled against Travelers because neither is a proper party. See id. at 2. Finally, the defendants argue that the Court should dismiss all requests for punitive damages because HRH fails to allege a willful tort. See id. HRH opposed the motion, see Pls.' Mem. Opp'n to Mot. [ECF No. 13] ("Opp'n"), and the defendants filed a reply, see Defs.' Reply to Opp'n [ECF No. 15] ("Reply"). The motion is now fully briefed and ripe for decision.

## LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When reviewing such a motion, courts must "accept the [complaint's] factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Sanchez v. Off. of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022). Courts should not, however, accept the complaint's "legal conclusions" or "legal contentions couched as factual allegations," Gulf Coast Mar. Supply, Inc. v. United States, 867 F.3d 123, 128 (D.C. Cir. 2017), nor must they "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice," Scahill v. District of Columbia, 909 F.3d 1177, 1186 (D.C. Cir. 2018) (internal quotation marks omitted).

## ANALYSIS

The Court addresses each of the defendants' arguments in turn, first by count, then as to punitive damages, and then by each allegedly improper party.

### I.    Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing

The defendants argue that HRH fails to state a claim for a breach of the implied covenant of good faith and fair dealing. See generally Mem. at 7–9. Under D.C. law, "all contracts contain an implied duty of good faith and fair dealing." PeaceTech Lab, Inc. v. C5 Accelerate LLC, Civ. A. No. 20-922 (JDB), 2021 WL 106718, at *7 (D.D.C. Jan. 12, 2021) (quoting Murray v. Wells Fargo Home Mortg., 953 A.2d 308, 321 (D.C. 2008)).[3] "[A] party to a contract may be liable for a breach of the duty of good faith and fair dealing if the party evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party." Id. (quoting Murray, 953 A.2d at 321) (alteration in original). The definition of good faith and fair dealing under D.C. law "varies depending on the context in which it arises." Window Specialists v. Forney Enters., 106 F. Supp. 3d 64, 89 (D.D.C. 2015). Good faith requires "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Id. (quoting Restatement (Second) Contracts § 205 cmt. a (1981)). Fair dealing "involves reasonable rather than arbitrary or capricious action." Allworth v. Howard Univ., 890 A.2d 194, 202 (D.C. 2006) (citing Adler v. Abramson, 728 A.2d 86, 90 (D.C. 1999)).

Examples of bad faith—i.e., evading the spirit of the contract—include "lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." Allworth, 890 A.2d

---

[3] A district court sitting in diversity must apply the substantive law of the state in which it sits. See, e.g., Klayman v. Barmak, 602 F. Supp. 2d 110, 115 (D.D.C. 2009) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). The parties do not dispute that the Court must apply the substantive law of the District of Columbia. See Mem. at 2 n.4; see also, e.g., Opp'n at 5.

at 201–02 (citing § 205 cmt. d).  Bad faith includes conduct or inaction that "violate[s] standards of decency, fairness[,] or reasonableness."  See id. (quoting § 205 cmt. a).

HRH posits sixteen ways in which the defendants allegedly acted in bad faith while investigating the insurance claim.  See Am. Compl. ¶ 52; Opp'n at 8–9.  The defendants argue that none of those allegations "support[] the inference that [they] have evaded the spirit of the Policy, willfully rendered imperfect performance, or interfered with [HRH's] performance."  Mem. at 7–8.  The Court agrees that not all sixteen contentions plausibly allege bad faith—but some do.

HRH's unplausible allegations of bad faith require only a short discussion.  To start, HRH contends that the defendants weaponized Rachel Traverso's examination because "the questioning went far afield from the Claim and what was permitted under the Policy."  See Am. Compl. ¶¶ 35, 52(d).  Yet the amended complaint provides no supporting detail for this allegation, such as what the inappropriate questions were and why they were far afield from a normal insurance claim examination.  Such conclusory allegations cannot plausibly allege bad faith.  See Air Excursions LLC v. Yellen, 66 F.4th 272, 277 (D.C. Cir. 2023) (allegations that "are no more than conclusions[] are not entitled to the assumption of truth" (quoting Iqbal, 556 U.S. at 679)); see also Ridolfi v. State Farm Mut. Auto. Ins. Co., 146 F. Supp. 3d 619, 621–22 (M.D. Pa. 2015) (allegations of insurer's unreasonableness "without additional factual support, are merely conclusory").

HRH creeps closer to plausible allegations of unreasonableness with its contention that the defendants "request[ed] information unrelated to Plaintiffs' Claim," with elaboration that the defendants requested the Traversos' personal tax returns, personal credit card statements, and personal bank statement to process a business insurance claim and then did not respond to HRH's request to sign a non-disclosure agreement as to those personal documents.  See Am. Compl. ¶¶ 52(a)–(b); 31–32.  Although HRH certainly could have provided more factual support, these

allegations "permit a reasonable inference" that "[d]efendant[s'] requests for information were irrelevant . . . or designed to delay" the investigation and thus that they were made "with some motive of self-interest or ill will." See Ridolfi, 146 F. Supp. 3d at 624–25; Nugent v. Unum Life Ins. Co. of Am., 752 F. Supp. 2d 46, 54 n.3, 57 (D.D.C. 2010) (finding allegations of insurer's excessive delays, multiple failures to respond to the claimant's communications, and repeated requests for the same information in processing claim supported plausible allegation of breach of covenant of good faith and fair dealing under D.C. law).

Finally, HRH's strongest allegations pertain to the defendants' allegedly unreasonable delays in the investigation and processing of the claim. See Am. Compl. ¶¶ 52(f)–(h). HRH first alleges that the defendants did not provide substantive updates or action on the investigation for the six months between October 15, 2021, and April 4, 2022. See id. ¶¶ 25–31. This delay is despite Kennedy's multiple January 2022 representations that he had reached out to the investigator and "should have an update" shortly on whether the investigation was complete. See id. ¶¶ 26–29. And it appears from the record that Kennedy never provided an update on the investigation. See id. ¶ 31. Next, when the defendants' attorney requested examinations of the Traversos in early April 2022, HRH agreed and made "several attempts" to schedule the examinations. See id. ¶¶ 32–34. But the defendants—who had requested the examinations—did not respond to HRH's attempts to schedule, and the examinations did not occur for nearly five months. See id. Similarly, although HRH acknowledges that Rachel suspended her August 2022 examination, HRH contends that it then "contacted Defendants' counsel on several occasions" to reschedule it, but the defendants neither responded to HRH's communications nor rescheduled the examination during the nearly four months between when Rachel ended the examination and when HRH filed the complaint. Id. ¶¶ 35–38.

HRH does not proffer what would have been a reasonable duration of investigation, which causes some courts to cast doubt on allegations of unreasonable delay. See, e.g., Luna v. Nationwide Prop. & Cas. Ins. Co., 798 F. Supp. 2d 821, 827 (S.D. Tex. 2011) (granting insurance company's motion to dismiss because plaintiff failed to allege, among other facts, "what [defendant] ought to have done to conduct a reasonable investigation"). But here the policy itself provides some guidance. The policy's separate forms for Building and Property Coverage and Business Income Coverage state that HRH must send the defendants "a signed, sworn proof of loss containing the information we request to investigate the claim . . . within 60 days after [the insurer's] request," with the insurer providing "the necessary forms." Policy at 82, 92. Then, as to the Building and Property Coverage claim, the defendants "will give notice of [their] intentions within 30 days after [they] receive the sworn proof of loss," id. at 83, and as to both Building and Property Coverage and Business Income Coverage claims, the defendants "will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if" HRH has complied with the terms of the coverage forms, and either the parties have agreed on the amount of loss or an appraisal award has been made. See id. at 83; id. at 93 (similar wording). Neither party addressed whether HRH filed either sworn proof of loss, but as to the Building and Property Coverage claim, HRH proffers that the parties performed the subsequent step of "reach[ing] agreement as to what items/areas will fall under" that claim. See Am. Compl. ¶ 23.

Drawing all reasonable inferences in HRH's favor, see Sanchez, 45 F.4th at 395, HRH has plausibly alleged that the defendants received the required documentation from HRH for their Business and Property Coverage claim but did not complete the investigation into the claim or give notice of an intent to pay (let alone pay) the claim for multiple months before HRH filed suit—a far cry from the 30 days envisioned in the policy. In fact, each multi-month delay that HRH alleges

is itself longer than the 30-day window.  This neglect of the timeline that the policy seems to require, plus the defendants' other conduct that HRH avers, plausibly alleges bad faith in the form of "lack of diligence and slacking off," and unreasonable inaction.  See Allworth, 890 A.2d at 201–02; see also Temple v. Hartford Co. of Midwest, 40 F. Supp. 3d 1156, 1168 (D. Ariz. 2014) (denying defendant's motion for summary judgment on bad faith tort claim where the defendant-claims adjuster "testified that she did not accept [plaintiff's] claim for disability benefits due to lack of supporting documentation . . . [but] could not describe what additional information she needed").

The Court therefore denies the defendants' motion to dismiss Count Two.

## II.    Counts Three and Four: Breach of Fiduciary Duty and Negligent Handling of Insurance Claim

The defendants next contend that the Court should dismiss HRH's tort claims for breach of fiduciary duty and the negligent handling of an insurance claim because both claims are premised on an insured party alleging that the insurer breached a contractual duty, and tort claims with that factual predicate are not cognizable under D.C. law.  See Mem. at 5 (citing Choharis v. State Farm Fire & Cas. Co., 961 A.2d 1080, 1089 (D.C. 2008)).  Because neither tort claim would exist but for the contractual relationship, the defendants argue, the Court must dismiss both claims. See id.

HRH disagrees.  HRH claims that the defendants' "taking 'complete control over the investigation and preventing Plaintiffs from accessing any of their personal property'" at the premises "is not the normal conduct of an insurance company."  See Opp'n at 6 (quoting Am. Compl. ¶ 56).  The defendants' conduct was therefore separate from the obligations that they owed HRH under the contract.  See id. at 7.

As a general matter, "[d]isputes relating to the respective obligations of the parties to an insurance contract should generally be addressed within the principles of law relating to contracts." Choharis, 961 A.2d at 1087. As such, to have a cognizable tort claim, "the tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship. The tort must stand as a tort even if the contractual relationship did not exist." Id. at 1089. In light of this requirement, the D.C. Court of Appeals has therefore "declin[ed] to recognize a tort action in a first-party breach of contract situation," id. at 1088, with a small exception:

> [C]onduct occurring during the course of a contract dispute may be the subject of a . . . [tort] claim when there are facts separable from the terms of the contract upon which the tort may independently rest and when there is a duty independent of that arising out of the contract itself, so that an action for breach of contract would reach none of the damages suffered by the tort.

Id. at 1089. HRH argues that its tort claims meet this narrow exception. In HRH's view, the torts in Counts Three and Four stem from "facts separable from the terms of the contract" and are premised on duties that are "independent" of the party's contractual duty such that "an action for breach of contract would reach none of the damages suffered by the tort." Id.; Opp'n at 6–7.

The Court analyzes the counts together because the claims are similar—and because they fail for the same reasons. In Count Three, HRH asserts that the defendants owed HRH a fiduciary duty because the defendants assumed complete control over the investigation and prevented HRH from accessing its personal property during the investigation. See Am. Compl. ¶ 56. In Count Four, HRH contends that defendants acted negligently in handling HRH's insurance claim by failing to exercise reasonable care in the evaluation and processing of the claim, including by making duplicative requests for information, conducting duplicative investigations, failing to

promptly resolve the investigation, and preventing HRH from salvaging its property after the fire. See id. ¶¶ 63–64.

Choharis is on point. There, the plaintiff had alleged a series of bad-faith torts against his insurer, State Farm, for its alleged misrepresentation about available housing during the pendency of his home repairs and alleged failure to provide an accurate assessment of mold damage to his home. Choharis, 961 A.2d at 1085–86. The court concluded that his tort claims were not cognizable because they were not independent from the contract and could be compensated through contract law: State Farm's statements related to housing availability, and any duty regarding those statements, went "directly to the question of interim living expenses provided for in the contract," and State Farm's duty to provide an accurate assessment of mold "would flow basically from the contractual relationship." Id. at 1089–90.

As in Choharis, in Count Three HRH fails to plausibly allege that the defendants' breach of fiduciary duty and negligence "flow from considerations other than the contractual relationship." See id. at 1089. HRH contends that the defendants breached their fiduciary duty in part by "refusing to timely process and pay" the insurance claim. Am. Compl. ¶ 57. But whether and how the defendants processed and paid an insurance claim goes "directly to the question of [claims] provided for in the contract." See Choharis, 961 A.2d at 1089. HRH underscores this overlap by using the same factual allegations in support of this tort claim and its contract claims. See Am. Compl. ¶ 46 (defendants breached the contract by "failing to pay the claim; failing to acknowledge and act reasonably promptly upon communication with respect to the Claim; . . . [and] failing to affirm or deny coverage of claim within a reasonable time"); id. ¶¶ 52(e), (f), (h) (defendants breached the implied covenant of good faith and fair dealing by "failing to pay the Claim," "failing to acknowledge and act reasonably promptly upon communication with respect

to the Claim," and "failing to affirm or deny coverage within a reasonable time"); id. ¶ 57 (defendants breached their fiduciary duty by "refusing to timely process and pay the Claim").

HRH also contends that the defendants breached their fiduciary duty "by putting [their] financial interests ahead of [their] insured." See id. The plain text of this allegation—that there is a duty pursuant to the insurer-insured relationship—is a dead giveaway that the claim arises from the insurance contract. Moreover, HRH again uses this allegation to support both its tort and contract claims, which further illustrates the interdependency of the claims. See id. ¶¶ 52(n)–(o) (defendants breached the implied covenant of good faith and fair dealing by "failing [to] give Plaintiffs' interests the same consideration as its own" and "demonstrating a greater concern for its monetary interests rather than the financial interests of the insured"); id. ¶ 57 (defendants breached their fiduciary duty by "putting its financial interests ahead of its insured"). This conduct, therefore, is not independent of the underlying contract, and any related duties that the defendants owed HRH similarly stemmed from the contract. See Choharis, 961 A.2d at 1089.

Count Four is similar. HRH contends that the defendants negligently handled HRH's insurance claim by failing to exercise reasonable care in the evaluation and processing of the claim. HRH supports this claim with seven factual contentions, including that the defendants "ma[de] multiple requests for the same information"; "fail[ed] to assign properly trained staff to handle the Claim"; "conduct[ed] multiple investigations . . . for a single claim, which has caused confusion" and required HRH to repeatedly "provide the same information"; "fail[ed] to completely evaluate the information provided by Defendants"; "allow[ed] its investigation to go beyond the scope of the Claim or what is required under the Policy"; and "fail[ed] to promptly respond to Plaintiffs' communication and/or to promptly schedule the examination under oath of Ms. Traverso." Id. ¶ 63. But here, too, these facts go to the contractual question of whether the defendants' conduct

in handling the insurance claim breached the parties' contract.  This overlap is again further demonstrated by the fact that HRH uses most of these facts to support its contract claims, too.  <u>See</u> ¶ 46 (Count One); ¶¶ 52(a)–(d), (f)–(g), (i), (j), (l)–(n) (Count Two).  Those facts are thus not separable from the contract.  <u>See</u> <u>Nugent</u>, 752 F. Supp. 2d at 54–55 (concluding a tort claim "necessarily arose from the contractual relationship" because, "but for the contract between Nugent and Unum, there would be no independent facts or bases sufficient to support" the tort claim); <u>Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.</u>, 944 A.2d 1055, 1070 (D.C. 2008) (concluding plaintiff's negligence and breach of fiduciary duty claims based on the contract were "an impermissible re-characterization of the breach of contract claim" (internal quotation marks omitted)).

For both Counts Three and Four, HRH has failed to plausibly allege torts that arise from a duty that the defendants owed to HRH independent of the insurance contract and that are supported by facts separable from the contract.  As such, HRH has failed to demonstrate that a breach of contract action "would reach none of the damages suffered by the tort."  <u>See</u> <u>Choharis</u>, 961 A.2d at 1089.  HRH's tort claims are therefore unavailable under D.C. law.

The Court will therefore grant the motion to dismiss Counts Three and Four.

## III.    Punitive Damages

The defendants next move to dismiss all requests to recover punitive damages because HRH has failed to allege conduct that "assumes the character of a willful tort."  <u>See</u> Mem. at 12. The Court construes the defendants' motion as a motion to strike punitive damages from the claims surviving the motion to dismiss,[4] and because HRH no longer pursues punitive damages for Count

---

[4] "Because a request for punitive damages is not a 'claim' but a prayer for relief, courts in this Circuit have often construed a motion to dismiss punitive damages as a motion to strike, while ruling on it concurrently with motions to dismiss."  <u>Matiella v. Murdock Street, LLC</u>, Civ. A. No. 21-2112 (GMH), 2024 WL 3967367, at *19 (D.D.C. Aug. 28, 2024) (collecting cases); <u>see, e.g.</u>, <u>Anderson v. Wash. Hilton, LLC</u>, Civ. A. No. 21-1140 (JEB),

One, see Opp'n at 13 ("Choharis later explained that punitive damages are not available if there is no independent willful tort . . . [and] Plaintiffs' claims in Counts II-IV are such independent torts." (cleaned up)); id. at 14 (listing the facts that HRH proffers to support its claims for punitive damages, all of which pertain to Counts Two and Three), the Court will only rule on the motion as to Count Two, breach of the implied covenant of good faith and fair dealing.

Under D.C. law, "[i]t is well-recognized that punitive damages are not favored in the law." Choharis, 961 A.2d at 1090 (quoting Sere v. Grp. Hospitalization, Inc., 443 A.2d 33, 37 (D.C. 1982)). Even for tort actions, where such damages are permitted, punitive damages are available "only in cases which present circumstances of extreme aggravation." Id. And "where the basis of a complaint is . . . a breach of contract, punitive damages will not lie, even if it is proved that the breach was willful, wanton, or malicious." Nugent, 752 F. Supp. 2d at 57 (quoting Sere, 443 A.2d at 37). Rather, punitive damages are available only "where the alleged breach of contract merges with, and assumes the character of, a willful tort." Id.; see also Fireman's Fund Ins. Co. v. CTIA, 480 F. Supp. 2d 7, 13 (D.D.C. 2007) ("The District of Columbia's exception to the general prohibition on punitive damages for contract claims applies most often if the breach of contract merges with an independent, recognized tort, such as IIED or fraud."). To allege a willful tort, a plaintiff must plausibly allege that the defendant's conduct was "outrageous, characterized by malice, wantonness, gross fraud, recklessness, or willful disregard of the plaintiff's rights." See Choharis, 961 A.2d at 1090 (quoting Sere, 443 A.2d at 37).

HRH claims that the defendants' delayed processing of the insurance claim for "over two years" and prohibiting HRH "from accessing the Premises to try to salvage what they could of

---

2021 WL 3885724, at *2 (D.D.C. Aug. 31, 2021) (same). "If Plaintiff has not pleaded sufficient facts to support his request for punitive damages, ruling on the issue of punitive damages now—as opposed to at a later stage—promotes judicial economy by focusing the parties on the live issues and avoids opening Defendants unnecessarily to discovery as to their finances." Matiella, 2024 WL 3967367, at *19.

their business while simultaneously ignoring [HRH] while their business died" are willful torts. Opp'n at 13.  But even assuming <u>arguendo</u> that these are willful torts, they are not independent from HRH's contract claims.  As discussed above, because this Court concludes that the torts alleged in Counts Three and Four are not independent and will therefore be dismissed, "the actions complained of here cannot be characterized as ones that 'merge with and assume the character of a willful tort" because "there is no independent tort into which the actions can 'merge.'" <u>Choharis</u>, 961 A.2d at 1090 (quoting <u>Sere</u>, 443 A.2d at 37); <u>see</u> <u>Fireman's Fund</u>, 480 F. Supp. 2d at 12–13.

The Court accordingly grants the defendants' motion to strike HRH's request for punitive damages.

## IV.    Propriety of Named Parties

Finally, the defendants move to dismiss all claims brought by Rachel Traverso and those lodged against Travelers.  According to the defendants, neither Traverso nor Travelers are parties to the policy, and because all claims arise from that policy, neither is a proper party to this case. <u>See</u> Mem. at 10.  Once again, the Court will analyze this motion only as to the remaining counts.

A breach of contract claim requires "a valid contract between the parties."  <u>See</u> <u>Est. of McDaniels v. Liberty Mut. Grp.</u>, 888 F. Supp. 2d 185, 189 (D.D.C. 2012) (quoting <u>Tsintolas Realty Co. v. Mendez</u>, 984 A.2d 181, 187 (D.C. 2009)).  "[A] stranger to a contract may not bring a claim on the contract."  <u>Fort Lincoln Civic Ass'n</u>, 944 A.2d at 1064.  "In order to sue for damages on a contract claim, a plaintiff must have either direct privity or third party beneficiary status."  <u>Id.</u>

### A.  Claims by Rachel Traverso

The defendants contend that Traverso does not have standing to bring the contract claims because she is not a party to the insurance contract.  <u>See</u> Mem. at 10.  For support, the defendants highlight several parts of the policy that list the insured party as only "HRH Services LLC DBA

16

The Alibi." See Mem. at 10 (citing Policy at 2, 4, 130).  HRH concedes that Traverso is not a

party to the contract, see Am. Compl. ¶ 42 ("[a]n insurance contract existed between HRH and

Defendants") but argues that it can be inferred from the policy that she is an "insured" and

therefore, in HRH's view, she has standing as a third-party beneficiary.  See id. ¶ 9; Opp'n at 12.

Every plaintiff must satisfy both Article III constitutional and prudential standing

requirements.  See, e.g., Am. Nat. Ins. Co. v. JPMorgan Chase & Co., 893 F. Supp. 2d 218, 226

(D.D.C. 2012).  The "indirect injury to [Traverso's] financial interest," as one of two members of

a company that is allegedly owed hundreds of thousands of dollars in insurance proceeds, "will

suffice" to demonstrate Article III standing, 333 8th St., NE, LLC v. Turnkey Title, LLC, Civ. A.

No. 23-941 (JEB), 2023 WL 5528028, at *3–4 (D.D.C. Aug. 28, 2023), which requires injury-in-

fact, causation, and redressability, see Fund For Animals, Inc. v. Norton, 322 F.3d 728, 732–33

(D.C. Cir. 2003) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).

"Prudential standing, by contrast, is a more complex, judge-made concept of standing,

encompassing a variety of legal doctrines, including the requirement in Federal Rule of Civil

Procedure 17 that the plaintiff be the 'real party in interest.'"  333 8th St., NE, 2023 WL 5528028,

at *3 (internal quotation marks omitted).  The inquiry is "not whether a plaintiff has a tangible

stake in the action, but whether he is a proper proponent of the particular legal rights on which he

bases his suit."  Id. (cleaned up).  In other words, "the plaintiff generally must assert his own legal

rights and interests," not those of a third party such as the LLC.  Martin v. Santorini Cap., LLC,

236 A.3d 386, 393 (D.C. 2020) (quoting Consumer Fed'n of Am. v. Upjohn Co., 346 A.2d 725,

727 (D.C. 1975)).  And because an LLC "is an entity distinct from its member or members" such

that members "are not the LLC nor do they own an LLC's property," a member's "economic

damage resulting from losses to the [LLC] is not a direct or independent harm giving rise to [member] standing." Id. at 393–95.

Traverso is not the real party in interest for any of the plaintiffs' claims. In fact, she does not argue that the defendants owed her a duty independent of their duties owed to HRH, let alone that the defendants violated such a duty. See 333 8th St., NE, 2023 WL 5528028, at *4. "The Complaint, as to all four counts, does not distinguish between Plaintiffs." Id.[5] Similarly, Traverso does not allege a distinct injury that she suffered as compared to HRH, nor does she seek different damages. Once again, the complaint does not distinguish between harm to HRH and harm to Traverso. The plaintiffs together claim that the defendants' alleged failure to timely process and pay an insurance claim caused economic harm through unpaid insurance proceeds, lost business revenue, and damage to equipment and property—which belong to HRH as the owner of the restaurant. See, e.g., Am. Compl. ¶¶ 48–49; Martin, 236 A.3d at 393–95 (economic losses to the LLC are not the property of or harm to the LLC's members). Traverso's claim, therefore, is exactly the type of situation envisioned and prohibited by the courts in Martin and 333 8th St., NE. Her "economic damage resulting from losses to the [LLC] is not a direct or independent harm giving rise to" individual standing. Martin, 236 A.3d at 395; see, e.g., 333 8th St., NE, 2023 WL 5528028, at *4; Harpole Architects, P.C. v. Barlow, 668 F. Supp. 2d 68, 77 (D.D.C. 2009) ("To cinch matters . . . the corporation itself has also sued, in the same complaint and on the same theories, for the same harm." (quoting Pagan v. Calderon, 448 F.3d 16, 29 (1st Cir. 2006))).

Traverso's only path to prudential standing, therefore, is if she plausibly alleges that she is a third-party beneficiary of the contract between HRH and the defendants. "One who is not a party

---

[5] Traverso purports to "bring[] claims under the Policy related to the business, as well as claims that fall outside the Policy, also related to her interest in the business," Opp'n at 12, but the amended complaint only appears to bring the same four claims on behalf of both plaintiffs.

to a contract nonetheless may sue to enforce its provisions if the contracting parties intend the third party to benefit directly thereunder." W. Union Tel. Co. v. Massman Const. Co., 402 A.2d 1275, 1277 (D.C. 1979). "To be intended, a beneficiary need not be named in the contract, as long as he or she is ascertainable from the contract and the circumstances of the contract." Hossain v. JMU Props., LLC, 147 A.3d 816, 820 (D.C. 2016) (internal quotations omitted). And one way to ascertain an intent to benefit "is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him." Fort Lincoln Civic Ass'n, 944 A.2d at 1068.

HRH claims that Traverso is an intended third-party beneficiary of the policy because she meets the policy's definition of an "insured," and the parties intended to benefit those whom the policy defines as an "insured." See Opp'n at 12; see also Am. Compl. ¶ 9. HRH relies on section II(1)(c) of the policy, which defines "who is an insured" in relevant part as: "[as a] limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business." See Opp'n at 12 (quoting Policy at 26). In reply, the defendants argue that the section of the policy that defines "insured" parties appears only in the commercial general liability portion of the policy, and HRH's claims arise under the commercial property portion. See Reply at 2. The definition of "insured" on which HRH relies, the defendants argue, therefore does not apply to HRH's (and Traverso's) claims under the commercial property portion.

The Court agrees with the defendants: section II(1)(c) of the policy facially and unambiguously does not apply to the commercial property portion that forms the basis of HRH's case.[6] HRH's policy with Travelers is split into three sections. The first section, titled

---

[6] "[I]f a court determines that a contract is unambiguous, the interpretation is a question of law" that the court can resolve at the motion to dismiss stage. Rivers & Bryan, Inc. v. HBE Corp., 628 A.2d 631, 635 (D.C. 1993); see United States ex rel. Shemesh v. CA, Inc., 89 F. Supp. 3d 67, 74 (D.D.C. 2015).

"Commercial Insurance Policy," outlines the structure of HRH's policy, contains a schedule of forms and endorsements, and delineates which pages of the policy fall within the two sub-policies: the commercial general liability policy and the commercial property policy.  See generally Policy at 1–16.  The second section constitutes the commercial general liability policy.  See Policy at 17–71.  Finally, pages 72–129 contain the commercial property policy.  Page four of the Commercial Insurance Policy states that the section "General Liability Coverage Form"—which includes the relevant definition of an "insured"—applies "to the Commercial General Liability Coverage Part only."  See Policy at 4, 19–33.  HRH brought the insurance claim under the commercial property policy.  See Am. Compl. ¶¶ 11–16 (discussing only portions of the commercial property policy).  This definition of insured, therefore, does not apply to HRH's insurance claims.  As a result, Traverso would not be reasonable in relying on an inapplicable definition as manifesting the parties' intention to confer a right on her in the commercial property policy.  See Fort Lincoln Civic Ass'n, 944 A.2d at 1068.  HRH has not proffered any other reason why Traverso is a third-party beneficiary to the contract, and the Court does not ascertain any.

Because "[a] plaintiff bears the burden of proving that a court has subject-matter jurisdiction to hear her claims," 333 8th St., NE, 2023 WL 5528028, at *2,  and Traverso has not met that burden, the Court will grant the defendants' motion to dismiss Counts One and Two as brought by Rachel Traverso for a lack of prudential standing.

### B.  Claims Against Travelers

The defendants finally argue that Travelers is not a party to the policy and therefore HRH cannot bring contract claims against it, because "[i]t goes without saying that a contract cannot bind a nonparty."  Guttenberg v. Emery, 41 F. Supp. 3d 61, 68 (D.D.C. 2014) (quoting EEOC v. Waffle House, Inc., 534 U.S. 279, 294 (2002)).  To support Travelers's non-party status, the

defendants highlight several parts of the policy that list only Northfield as an insurer.  See, e.g., Mem. at 10 (citing Policy at 1, 3).

Many courts agree that third parties to insurance contracts, such as adjusters and administrators, do not, without more, have the contractual privity required to be held liable for a breach of the insurance contract.  See, e.g., McLaren v. AIG Domestic Claims, Inc., 853 F. Supp. 2d 499, 513 (E.D. Pa. 2012) ( "[W]here an insured's insurance company hires an adjuster to handle his or her claim, there is no contractual privity between the insured and the insurance adjuster absent a separate contract between [them.]"); see also Hawthorne v. Rushmore Loan Mgmt. Servs., Civ. A. No. 20-393 (RDM), 2021 WL 3856626, at *6 (D.D.C. Aug. 30, 2021) ("Judges around the country—including [in this district]—have held that a [third party loan servicer] has no contractual relationship or privity with the borrower and therefore cannot be sued for breach of contract.").

But here, HRH does not contend that Travelers has privity of contract with HRH.  Rather, HRH's argument focuses on Northfield's and Travelers's relationship.  In HRH's view, Travelers is liable under the contract because either Northfield was the actual or apparent agent of Travelers, or because Northfield and Travelers had a joint venture to "provid[e] insurance services."  See Am. Compl. ¶ 6.

### 1.  Agency

"The existence of an agency relationship is a question of fact."  United House of Prayer for All People v. D.C. Dep't of Transp., 285 A.3d 174, 181 (D.C. 2022) (quoting Henderson v. Charles E. Smith Mgmt, 567 A.2d 59, 62 (D.C. 1989)).  "[T]o determine whether a principal-agent relationship has been created, the court must analyze the relationship between the parties in its entirety and determine if two factors exist.  First, the court must look for evidence of the parties' consent to establish a principal-agent relationship.  Second, the court must look for evidence that

the activities of the agent are subject to the principal's <u>control</u>." <u>Id.</u> (quoting <u>Henderson</u>, 567 A.2d at 62).  For apparent agency, the plaintiff must plausibly allege that the "principal place[d] an agent in a position which causes a third person to reasonably believe the principal had consented to the exercise of authority the agent purports to hold."  <u>Dorsky Hodgson & Partners, Inc. v. Nat'l Council of Senior Citizens</u>, 766 A.2d 54, 56 (D.C. 2001) (quoting <u>Ins. Mgmt. v. Eno & Howard Plumbing Corp.</u>, 348 A.2d 310, 312 (D.C. 1975)).  Under either theory of agency, it is not enough to show that two companies have a "close working relationship."  <u>See</u> <u>id.</u>

Here, HRH fails to plausibly allege an agency relationship under either theory, because HRH has proffered facts that show only collaboration between the defendants—not the authority or control, real or reasonably perceived, that define agency relationships.  In support of its agency claims, HRH relies principally on the conclusory statement that "[a]t all times relevant, Defendant Northfield acted as the actual and/or apparent agent of Travelers."  <u>See</u> Am. Compl. ¶ 6.  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555); <u>see, e.g.</u>, <u>Morrow v. Allstate Indem. Co.</u>, Civ. A. No. 5:16-137 (HL), 2017 WL 1196441, at *9 (M.D. Ga. Mar. 29, 2017) (concluding plaintiffs failed to proffer "facts to suggest Allstate Indemnity was the agent of [defendants] . . . beyond a conclusory allegation that 'at all relevant times herein, Defendants acted in all respects as agent'").

Moreover, the few relevant proffered facts are also insufficient to plausibly allege Travelers's actual or reasonably perceived control of Northfield, or Northfield's exercise of authority on behalf of Travelers.  HRH provides examples of times when Travelers's employees responded to the insurance claim filed under a Northfield insurance policy.  <u>See</u> Am. Compl. ¶¶ 20–23; 26–28.  All that these facts demonstrate, however, is a working relationship between the

companies. Travelers's employees' involvement in handling a Northfield insurance claim does not plausibly demonstrate that the parties consented to an agency relationship, that Northfield's actions were subject to Travelers's control, or that a reasonable person could perceive that the parties consented for Northfield to act on Travelers's behalf. Parties' collaboration, without more, does not evince one party's control over the other. See, e.g., Dorsky, 766 A.2d at 56 (that one party listed the other as an "affiliate" and the parties had a "close working relationship" were insufficient to demonstrate agency); see also Morrow, 2017 WL 1196441, at *9–10 (that two insurance companies operated and traded under the same name, used the same name and slogan, and maintained a common website were insufficient to demonstrate agency).

HRH has therefore failed to plausibly allege an actual or apparent agency relationship between Travelers and Northfield.

## 2. Joint Venture

In the alternative, HRH contends that Travelers and Northfield participated in a joint venture to provide insurance services. District of Columbia law defines a joint venture as:

> an association of persons with intent, by way of express or implied contract, to engage in and carry out a single business venture for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, without creating a partnership or a corporation, pursuant to an agreement that there shall be a community of interest among them as to the purpose of the undertaking, and that each participant shall stand in the relation of principal as well as agent as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the venture.

Geier v. Conway, Homer & Chin-Caplan, P.C., 983 F. Supp. 2d 22, 34 (D.D.C. 2013). Each member of a joint venture is liable for the contracts that other members of the joint venture make in furtherance of the venture. See, e.g., Coles v. Redskin Realty Co., 184 A.2d 923, 926 (D.C. 1962); see also Jonathan Woodner Co. v. Laufer, 531 A.2d 280, 285 n.7 (D.C. 1987) ("Strictly speaking, a joint venture is not the same as a partnership, but there is very little law . . . applicable

to one that does not apply to the other." (citation omitted)).  HRH contends that because Northfield

and Travelers formed a joint venture for the purpose of providing insurance services, Travelers is

liable for insurance contracts that Northfield made in furtherance of that venture.

Like agency, in determining whether two or more parties formed a joint venture "the

fundamental issue is one of intent."  Wash. Inv. Partners of Del., LLC, v. Sec. House, K.S.C.C.,

28 A.3d 566, 578 n.13 (D.C. 2011) (quoting Fraser v. Gottfried, 636 A.2d 430, 432 (D.C. 1994)).

The inquiry focuses "less on the presence or absence of legal essentials than on the intent of the

parties gathered from their agreement, conduct, and the circumstances surrounding their

transactions."  Id. (quoting Beckman v. Farmer, 579 A.2d 618, 628 (D.C. 1990)).  As such, the

movant must generally proffer facts demonstrating the basic elements of a joint venture, such as

the parties' ability to control one another's conduct, joint ownership of one another's business

property, indication of their professional cooperation, and evidence of special duties or obligations

to one another that suggest a joint venture.  See Boyd v. Kilpatrick Townsend & Stockton, 164

A.3d 72, 83 (D.C. 2017) (citing Wash. Inv. Partners, 28 A.3d at 578).

HRH provides a slew of facts to support its proffer that Travelers investigated and

processed multiple portions of HRH's insurance claim pursuant to HRH's policy with Northfield.

For example, HRH provides e-mails sent by Alexander Casillas and Kennedy, both of whom have

an "@travelers.com" e-mail address and "Travelers" in their signature lines, and the e-mails do

not appear to include any individuals with Northfield e-mail addresses.  See Am. Compl. ¶¶ 20,

26, 28.  HRH also provides examples of actions that Travelers took both with and independently

from Northfield to evaluate HRH's claim.  See id. ¶¶ 21–25, 31–35.

As with HRH's agency argument, the Court agrees that this information indicates some

relationship between the parties.  But here, too, proof of some relationship falls short of HRH's

burden to plausibly allege a joint venture. To start, the hallmark of a joint venture is a joint community of interest, including joint control and joint sharing of profits and losses. See, e.g., Wash. Inv. Partners, 28 A.3d at 579; Geier, 983 F. Supp. 2d at 34; Transit Mgmt. of Se. La., Inc. v. Grp. Ins. Admin., Inc., 226 F.3d 376, 384–85 (5th Cir. 2000); Trustmark Ins. Co. v. Gen. Cologne Life Re of Am., Civ. A. No. 1926 (BMM), 2002 WL 1263997, at *4 (N.D. Ill. June 3, 2002). All HRH has demonstrated is that Northfield and Travelers each played some role in the issuing, handling, and/or processing of HRH's insurance claim. Neither the division of responsibilities nor the few efforts that HRH alleges the defendants undertook together evince joint control or joint sharing of profits or losses. See, e.g., Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am., 424 F.3d 542, 548 (7th Cir. 2005) (disagreeing that parties' division of responsibilities "along functional lines" alone demonstrates the "mutual control necessary to establish a joint venture").

HRH does not appear to argue that the parties have formed a joint venture based on their perceived relationship as an insurer and a claims administrator or adjustor, and for good reason. Courts routinely reject the notion that these relationships, without more, constitute joint ventures. See, e.g., Ingram v. Great Am. Ins. Co., Civ. A. No. 13-2265 (SPL), 2016 WL 11782439, at *3 (D. Ariz. Sept. 22, 2016), aff'd sub nom. Ingram v. RTW, Inc., 729 F. App'x 605 (9th Cir. 2018) ("RTW is solely the third-party administrator and performed claims handling on behalf of GAIC. As such, no joint venture existed.").

And finally, even in the handful of cases where courts have concluded that the plaintiffs plausibly alleged a joint venture between insurance providers and administrators without alleging some of the classical elements of a joint venture, which may be superficially similar to the case

here, those plaintiffs still pled facts demonstrating a far greater level of coordination and intermixing of efforts and resources than HRH has pled here.[7]

Because Travelers is not a party to the insurance contract and HRH has failed to plausibly allege that Northfield and Travelers have either an agency or joint venture relationship, the Court will dismiss Counts One and Two as pled against Travelers.[8]

## **CONCLUSION**

For these reasons, defendants' partial motion to dismiss will be GRANTED in part and DENIED in part. A separate Order will issue on this date.



                                        /s/
                                   JOHN D. BATES
                             United States District Judge

Dated: December 30, 2024

---

[7] In <u>Sparks v. Republic National Life Insurance Co.</u>, 647 P.2d 1127 (Ariz. 1982), the en banc Arizona Supreme Court affirmed the finding of a joint venture where insurer Republic underwrote the policy, set guidelines for administrator ALPHA to follow in processing claims, and processed some of the claims, and ALPHA marketed and administered the policy, issued certificates of coverage, billed and collected premiums, investigated and processed the remaining claims, and prepared sales brochures. <u>See id.</u> at 1137–38. In <u>Monaco v. Liberty Life Assurance Co.</u>, Civ. A. No. 06-7021 (MJJ), 2007 WL 1140460 (N.D. Cal. Apr. 17, 2007), the plaintiff plausibly alleged that Liberty Mutual controlled and managed Liberty Life's claim operations and training; the entities shared a corporate headquarters, personnel, equipment, telephone, computers, webpage, board chairman, seven directors, counsel, and logo; were part of the same holding company, and had "integrated" their operations via a separate agreement. <u>See id.</u> at *5, *7. And in <u>Sliney v. New Castle County</u>, Civ. A. No. 19C-05-061 (FWW), 2021 WL 1235204 (Super. Ct. Del. Mar. 31, 2021), the plaintiff alleged that Highmark, the County insurance plan administrator, was "the real party with whom [he dealt] and who made all the important decisions," including the denial of payments for certain medical treatments and the denial of plaintiff's appeal. <u>See id.</u> at *6.

[8] HRH argues that if Travelers is not a proper defendant for the contract claims, then it is a proper defendant for the tort claims because the torts need not arise independently from the contract under <u>Choharis</u>. <u>See</u> Opp'n at 11. This is not persuasive. HRH's tort claims as pled in the amended complaint contemplate a contractual relationship with both defendants and do not distinguish among the defendants. <u>See generally</u> Am. Compl. ¶¶ 51–65. HRH has thus not plausibly alleged that Travelers specifically owed HRH a fiduciary duty and a duty to exercise reasonable care, from where those duties arose, and that Travelers breached those duties.